Filed 6/23/21  P. v. Fraser CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JAMES ROBERTSON FRASER,<br><br>    Defendant and Appellant. | G059111<br><br>(Super. Ct. No. 15NF0685)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

James Robertson Fraser appeals from the judgment following his conviction for second degree murder. Fraser contends the judgment must be reversed because the trial court abused its discretion by (1) admitting into evidence graphic photographs that were irrelevant to the disputed issues in the trial and were highly inflammatory; (2) declining to strike Fraser's prior strike pursuant to Penal Code section 1385, subdivision (a); and (3) declining to strike the enhanced sentence for that prior serious felony pursuant to subdivision (b) of section 1385.[1]

We find no error and affirm the judgment. Fraser failed to include the challenged photographs in our record and he thus waived any challenge to the propriety of their admission. The trial court's rulings are presumed correct and without reviewing the photographs, we cannot conclude the court erred by allowing the jury to see them. In any event, Fraser's objections to the photographs, as described in the record,[2] do not suggest the court erred. The circumstances of the victim's death were inherently gruesome, as were his wounds. It is not surprising the photographs documenting those circumstances and wounds would reflect that reality. That fails to render them inadmissible. Nothing in Fraser's description suggests the photographs were gratuitously disturbing and the record makes clear the court exercised its discretion by excluding some photographs while admitting others.

Fraser's arguments regarding his priors fare no better. While the court has discretion to dismiss a prior strike, or to dismiss a sentence enhancement, it has no obligation to do so. As long as the court's decision was an appropriate exercise of its discretion, we will not disturb it.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] According to Fraser, the challenged photographs depict the fatal wounds he inflicted on his victim as well as the bloody interior of the vehicle in which the victim was transported from the crime scene and the scene where he was treated.

## FACTS

Fraser and his victim, Pedro Toro, were both acquainted with Melissa A. Toro was Melissa's best friend, and he sometimes performed handyman services at the home of Melissa's aunt, Debra L., where Melissa resided in a converted garage bedroom.

Melissa acted as a nighttime caregiver for her grandmother, who also resided in Debra L.'s home; Toro came over at night to help Melissa. Their relationship was not romantic.

Fraser was romantically involved with Melissa for a brief time and he resided with her in the garage bedroom for a short time before they broke up. Fraser was upset about the breakup. After the breakup, Toro resumed coming over at night to help Melissa care for her grandmother.

The stabbing occurred in March 2015, shortly after Fraser and Melissa separated. A couple of days before the stabbing, Melissa became aware that something had created a rift between Fraser and Toro.

On the day of the stabbing, Debra L. came home in the early morning from her shift at work. Debra, Toro, Melissa and her friend decided to go to a casino. Toro rode in the car with Debra, while Melissa rode with her friend. Shortly after arriving at the casino, Melissa and her friend departed, and the friend dropped Melissa off at a home where Fraser was staying. Melissa wanted to see her dog and drop off Fraser's belongings. Fraser told Melissa he wanted to get back together, but she told him she was not interested.

After Debra and Toro left the casino, they called Melissa and arranged to pick her up after they went shopping. Melissa told Fraser that Debra and Toro were coming to pick her up. Fraser tried to convince Melissa to stay, but she declined.

During the drive, Toro appeared to be in good spirits; Debra testified he was not angry or agitated. When they arrived, Toro got out of the car and climbed into the back so Melissa could get in the front. Debra called Melissa to tell her to come

3

outside. Melissa did not answer; Debra said, as "it was ringing . . . [Melissa] came out. So I just held the phone," which resulted in a voicemail narration of the incident. Melissa started down the driveway; she was quickly followed by Fraser and another man, Vincent F., who lived at the house. Vincent was described by Debra as "barreling out" of the house, as though he wanted to either start something or stop it.

When Fraser approached the car, he yelled to Toro, "Come here, bro." Toro did so. Melissa was near Fraser, facing him with her back to the car; she appeared to be trying to deter him by putting her hands up. Debra pleaded with Toro to get back in the car because she sensed something was wrong. Instead, Toro walked up to Fraser, and then—according to Debra—he reached behind Fraser to shake Vincent's hand. As he was doing that, Fraser hit him in the neck with what Debra believed was just a fist.

Testifying for the defense, Vincent had a slightly different take. He claimed Toro exited the car and approached Fraser in an aggressive manner. Vincent believed Toro had something in his hand, although Vincent could not see what it was. He stated that he tried to get between Fraser and Toro because he was concerned about an altercation. Vincent described Toro as moving around him to get at Fraser. He said the confrontation lasted only seconds.

Contrary to Debra's initial impression, Fraser struck Toro with a blade, not his bare fist. This caused Toro to bleed profusely. He began walking back toward Debra's car. When she saw he was bleeding, she exclaimed "Oh my God! What did he do, stab you? He stabbed you? Oh my God, emergency room. Oh my God, get in the car."

After Toro got into the car, Debra sped to a hospital. A police officer who had been patrolling the area saw Debra pull away from the curb at high speed, and then observed her running two stop signs and a red light. He activated his lights and sirens in an effort to stop the car.

4

When Debra stopped, the police officer recognized that Debra was panicking; she told him her passenger had been stabbed in the neck and was bleeding. The officer saw that Toro was covered in blood and had blood coming from his nose and mouth, as well as from the laceration on his neck. He called for paramedics and backup. First aid was administered to Toro at the scene and he was then transported to the hospital where he died.

An autopsy revealed that Toro, who was 5'6" tall and weighed 130 pounds,[3] had suffered three stabbing/cutting wounds—on the left side of his neck, the back of his left shoulder, and the top of his right shoulder. The neck wound caused him to bleed to death, as it punctured both the carotid artery and the jugular vein. The autopsy also revealed Toro had methamphetamine in his system.

A pocket knife was found in Toro's right front jeans pocket. A box cutter was also discovered in the back seat of Debra's car, which she said did not belong to her. Other people used her car, including Melissa, and there were other items in it that did not belong to Debra.

When the officers returned to the home where the stabbing occurred, the driveway had been hosed down, but there was still blood in the gutter. Fraser was no longer there. He turned himself in to the police the next day.

Fraser was charged by information with first degree murder (Pen. Code. § 187); it was further alleged he had personally used a deadly weapon, i.e., a knife (Pen. Code, §§ 12022, subd. (b)(1); 1192.7). The information also alleged Fraser personally used a deadly weapon in violation of section 12022, subdivision (b)(1), and he suffered a prior serious and violent felony within the meaning of section 667, subdivisions (d) and (e)(1) and section 1170.12, subdivisions (b) and (c)(1), and had suffered a prior

---

[3] Fraser was about a foot taller than Toro, and significantly heavier.

serious felony within the meaning of section 667, subdivision (a)(1), as well as two prison priors within the meaning of section 667.5, subdivision (b).

Prior to the commencement of trial, the prosecutor moved, in limine, for an order admitting certain photographs into evidence. The first three photos (marked for the purpose of the hearing as the court's exhibit nos. 1-3), taken at the hospital after Toro was declared dead, depicted his wounds from various angles. Fraser argued that these photographs were unduly prejudicial because they were bloody, and also because they revealed medical paraphernalia used in the effort to save Toro's life, including a breathing tube that was hanging out of his mouth. The court rejected the argument, noting that while the photographs might be prejudicial, the prejudicial effect was outweighed by the probative value. The court reasoned that it was important for the jurors to see the condition Toro was in as a result of the alleged crime. At a later hearing, the court reiterated its ruling, noting there was nothing especially graphic about the hospital photographs.

Fraser also asked the court to exclude three photographs showing the street scene where Toro was treated before being transported to the hospital (marked for purposes of the hearing as the court's exhibit nos. 4-6), arguing there was "something particular about these photographs that takes [them] outside of the realm [of] the other photographs." What distinguished those photographs from the others was not revealed, but Fraser's counsel argued the photographs were unduly prejudicial because they included "lots of blood . . . even on the curb . . . ." The court again concluded the photographs were admissible, noting that one of them was the only photograph that depicted "the actual victim at or near the time of the offense."

At a later hearing to determine whether the prosecutor could publish certain photographs to the jury in her opening statement, the court once again considered their admissibility. People's exhibit nos. 2 and 3 are described as showing the passenger seat area inside the car where Toro was riding after being stabbed. Fraser objected to the

6

photographs on the basis they were irrelevant because they did not show the scene where the alleged crime occurred and did not establish any fact relevant to the prosecutor's case. The court nonetheless reasoned the photographs were relevant because they depicted the interior of the car observed by Debra, and her credibility was in dispute.

People's exhibit 4, taken at the hospital, is described as depicting some of Toro's wounds. His counsel did not object to the depiction of the wounds, but argued the photograph should be cropped to exclude the "tubes and the other medical paraphernalia" visible in the photograph. The court noted there was nothing overly graphic about the photograph, including the medical paraphernalia.

People's exhibit 5, showing Toro's bloody shirt, drew no objection. The defense objected to People's exhibit 6, a photograph of Toro's body covered on an autopsy table, as irrelevant. The court overruled the objection, after the prosecutor pointed out the photograph reveals the coroner's process in handling and numbering a victim's body.

The defense objected to People's exhibit 7, also described as depicting Toro's wounds but with the body uncovered on the basis that "showing again a deceased naked body . . . is not relevant towards what happened, how it happened and whether it was justified or not. It's gratuitous." The court sustained the objection noting it was almost the same photograph as exhibit 6.

At trial, the officer who pulled over Debra's car testified that when he approached the car, the passenger window was "slightly open," and he "saw blood shooting out the window." He described Toro, sitting in the passenger seat, as "slumped over with his head back," with "a large amount of blood" visible and "blood coming from his nose and his mouth." The officer also described Toro's clothes as covered with blood.

After the court admitted three photographs of the vehicle—including one depicting the blood coated passenger window and another depicting the bloody condition

7

of the glove compartment and area around the passenger seat, Fraser objected to the admission of a photograph depicting the console area of Debra's car, on the grounds it was cumulative. The court overruled that objection.

Fraser testified in his own defense and acknowledged he stabbed Toro. However, he claimed he acted in self-defense. He testified he did not have a knife when he came out of the house to meet Toro. Fraser claimed he asked to speak to Toro, who had his fist clenched, but that Toro responded he did not want to talk.

Fraser said Toro then pushed Vince out of the way before swinging a knife at Fraser. Fraser managed to knock the knife to the ground but he then picked it up. Meanwhile, Toro took out a second knife which he swung at Fraser. Fraser then swung the knife he had picked up and struck Toro.

The jury convicted Fraser of second degree murder, and found true that he had personally used a dangerous and deadly weapon in the commission of the crime.

## DISCUSSION

1. *Admission of Photographs*

Fraser first contends the court abused its discretion by admitting "several bloody and gory photographs," which prejudiced the jury against him. Evidence Code section 352 provides the court with discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Pursuant to that standard, ""'[t]he admission of photographs of victims lies primarily within the discretion of the trial judge who determines whether their probative value is outweighed by their prejudicial effect.'" [Citation.] '[A] trial court's refusal to exclude otherwise admissible photographs under [Evidence Code] section 352 will not be disturbed on appeal unless the prejudicial effect clearly outweighs the photos' probative

value.'" (*People v. Allen* (1986) 42 Cal.3d 1222, 1255-1256; see *People v. Falsetta* (1999) 21 Cal.4th 903, 913 ["[t]he admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair"].)

As explained in *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609, "[I]t is a fundamental principle of appellate procedure that a trial court [order or] judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment"].) Thus, an appellant who is asking this court to assess the relative probative and prejudicial effect of photographs, and assess their potential effect on the judgment, must provide the photographs as part of the appellate record. In their absence, we have no basis to conclude the court erred. In this case, Fraser did not include the photographs in our record, and has thus waived his claim of error.

In any event, based on the descriptions of the photographs as reflected in the reporter's transcript,[4] we find no abuse of the trial court's broad discretion for several reasons. First, Fraser appears to be challenging the admission of photographs as a group—an argument he never made to the trial court—rather than focusing on the propriety of the trial court's specific rulings on objections he made to the admission of a particular photograph or photographs. He argues, as a general proposition, that the photographs depicting the bloody interior of Debra's car, the bloody objects within it, the bloody scene where Toro was treated, and Toro's wounds, did little to advance the prosecution's case. He also points to case law stating that such photographs can have the effect of inflaming the jury.

---

[4]     Both sides cite to these descriptions of the photographs in their discussion of the issue.

9

However, we do not review objections that were not made below. And while it is true that Fraser did object, at least once, to the admission of a photograph on the ground that it was cumulative—thus suggesting its admission into evidence was unnecessary—he never objected that all of the photographs, as a group, should be excluded on the basis they were unnecessary or irrelevant as a group. Instead, he offered individual objections to specific photographs at various points during the trial. It is the propriety of the court's ruling on those individual objections that must be addressed—not the abstract question about whether it was appropriate to admit gruesome photographs in general.

If we had been asked to consider each individual ruling, our analysis of prejudice under Evidence Code section 352 would include an assessment of what other photographs and evidence were already before the jury at the time the court ruled. The fact that several similar photographs were already before the jury would likely blunt the potentially prejudicial effect of any additional photographs. (See *People v. Marsh* (1985) 175 Cal.App.3d 987, 999 ["The inflammatory nature of . . . other photographs, the admission of which is not an issue on appeal, diminishes the prejudicial impact of the [challenged] seven"]; see also *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 978 ["all discretionary authority is contextual"].) Fraser largely failed to address context in arguing, in effect, that the photographs were objectionable as a group.

Key to Fraser's argument is his assertion the photographs were irrelevant because they were unrelated to the specific issues he focused on in his defense, which related to his motive for stabbing Toro. He emphasizes he admitted he committed the stabbing, and that the stabbing caused Toro's death; those facts were not disputed at trial—and thus were not issues the jury was being asked to decide.

However, just because Fraser did not dispute those aspects of the prosecution's case did not eliminate the prosecution's obligation to prove them in the first instance. Fraser's plea of not guilty placed all elements of the crime in dispute. (*People*

10

*v. Balcom* (1994) 7 Cal.4th 414, 422.) And "'[r]elevant evidence'" is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

The same contention Fraser is advancing was rejected by our Supreme Court in *People v. Heard* (2003) 31 Cal.4th 946. There the defendant contended "the photographs were inadmissible to establish the cause of death or the nature of [the victim's] injuries, because he 'never contested these points.'" (*Id.* at p. 973.) The court responded that "the photographs were relevant to establish the injuries suffered by [the victim], the savageness of the attack, and the ferocious nature of the struggle." (*Ibid.*) Adding "[t]he circumstance that defendant did not challenge the prosecution's theory that the attack . . . was a vicious one 'does not render victim photographs irrelevant.'" (*Id.* at p. 974; see also *People v. Weaver* (2001) 26 Cal.4th 876, 933 ["the jury was entitled to see the physical details of the crime scene and the injuries defendant inflicted on his victims"].) The photographs here were relevant to establish that the stabbing occurred and the brutal nature of the wounds inflicted, even if those were not matters Fraser chose to contest in his defense.

Moreover, as the Attorney General points out, the photographs were relevant in assessing issues Fraser did dispute, including malice and motive. The severity and location of Toro's injuries could be viewed as evidence bearing on Fraser's claim that he was only defending himself, rather than acting with malice toward Toro. (See *People v. Farnam* (2002) 28 Cal.4th 107, 185 ["'Generally, photographs that show the manner in which a victim was wounded are relevant to the determination of malice, aggravation and penalty'"]; see also *People v. Lucas* (1995) 12 Cal.4th 415, 450 [photographs admissible to illustrate, among other matters, "intent to kill"].)

Finally, the disputed issues in a case are not limited to the elements of the crime. There are secondary issues as well, including—as the court pointed out in overruling at least one of Fraser's objections—the credibility of witnesses when

11

circumstances are in dispute. As the trial court pointed out when it overruled one of Fraser's objections to a photograph depicting the bloody interior of Debra's car, what Debra saw and experienced was relevant in assessing her credibility—an assessment Fraser continues to challenge in his opening brief on appeal. Several of the photographs would have been relevant on that ground—not only because they support Debra's description of events, but also because they depict the chaotic circumstances she experienced. (See *People v. Scheid* (1997) 16 Cal.4th 1, 15 [photograph was corroborative of witnesses' testimony regarding the circumstances of the crime, and the shocking crime scene encountered; thus, photograph bolstered the witnesses' credibility].)

Fraser's complaint about the gruesome nature of the photographs is also flawed because it ignores the nature of the stabbing he committed; the photographs depict that reality. The descriptions available to us do not suggest the photographs are gratuitously bloody, as was a concern in other cases. (See, e.g., *People v. Marsh, supra,* 175 Cal.App.3d at p. 999 ["These photographs are gruesome solely because of the autopsy surgeon's handiwork; removing the skull, opening the body cavity, covering the child's face with the exposed underside of the bloody scalp, etc. In other words, their inflammatory nature has been greatly enhanced by the manner in which the surgeon chose to 'pose' the body portions"].)

For all of the foregoing reasons, we find no error in the trial court's evidentiary rulings regarding these photographs.

2.      *Refusal to Strike Priors*

Fraser next contends the court abused its discretion by refusing to strike his prior serious or violent felony for sentencing purposes, as authorized by *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and section 1385, subdivision (a), and alternatively that the court abused its discretion under section 1385, subdivision (b), by

12

refusing to strike the additional punishment for that enhancement. We find no abuse of discretion.

Subdivision (a) of section 1385 allows the court, on its own motion or the motion of the prosecutor, to strike a prior conviction that would otherwise qualify as an enhancement for purposes of the Three Strikes Law, "in furtherance of justice." If the court does so, it is obligated to state its reasons orally on the record. Subdivision (b)(1) of section 1385 states that "[i]f the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a)."

However, as the Attorney General points out, the court's discretion to strike a strike pursuant to section 1385 is constrained by the Supreme Court which has "established stringent standards that sentencing courts must follow in order to find such an exception. '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'" (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

Significantly, "the law creates a strong presumption that any sentence that conforms to [The Three Strikes Law] is both rational and proper. [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or

13

where the court considered impermissible factors in declining to dismiss [citation]." (*Carmony, supra*, 33 Cal.4th at p. 376.)

In considering whether the trial court abused its discretion here, "we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' [Citation.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.'" (*Carmony, supra*, 33 Cal.4th at pp. 376-377.)

The serious or violent felony that the trial court refused to strike under section 1385 was Fraser's 2005 conviction for assault with a deadly weapon. The circumstances of the crime, as discussed in the probation report, involved Fraser holding his wife of three years by the arm and putting a gun to her head. After Fraser's wife called the police, he led them on a vehicle pursuit before he was apprehended. In addition to the assault charge, Fraser was convicted of inflicting corporeal injury on a spouse, of recklessly evading a police officer in violation of Vehicle Code section 2800.2, and of being a felon in possession of a firearm.

Fraser was also convicted of violating Vehicle Code section 2800.2 in 2009, as well as assault on an officer with a deadly weapon other than a firearm. Then, in 2014, he was convicted of felony resisting arrest in violation of Penal Code section 69 after he punched a deputy in the face and then kicked and punched other arriving deputies. Interspersed among these convictions were several other arrests and parole violations. When Fraser committed the instant offense, he was on parole.

14

The trial court properly considered these other crimes as part of Fraser's significant criminal history, while also contemplating Fraser's age, his progress on probation and parole, and other factors.

Ultimately, the court found similarity between Fraser's 2005 conviction and the conviction in this case because they both involved violence relating to his effort to control a romantic partner: "The court notes that this was a violent criminal episode that resulted in the intentional death of a 37-year-old man, and that the defendant exhibited disregard for the safety of others. [¶] The primary motive for this commission of this senseless act of violence was jealousy and the defendant's desire to arguably control his former girlfriend. Hence, the court declines to dismiss the strikes under section 667(d) and (e)(1) and the serious felony in the interest of justice under 1385 or 1385(b)(1) and *People versus Romero*."

Fraser nonetheless argues the court abused its discretion in refusing to either strike the strike under subdivision (a) of Penal Code section 1385, or strike the punishment under subdivision (b), for two reasons. First, he contends the fact that sixteen years had passed since the earlier felony rendered that conviction of minimal significance; second, he claims the circumstances underlying the conviction in this case were not especially egregious. In connection with the latter point, he sets forth the facts in the manner most favorable to himself, claiming that Toro "was out to hurt him and came to [Fraser's] place of residence, presumably to fight, and armed with a knife." But of course, we cannot adopt that characterization. There was plenty of evidence contradicting Fraser's contention that Toro was the aggressor in the incident, and we are obligated to construe the evidence in the light most favorable to the verdict.

Fraser's attempt to dismiss the earlier felony as too remote in time is unavailing; the law places no expiration date on the prior felonies that qualify as enhancements under the Three Strikes Law. Of course, a defendant is free to argue to the trial court—as Fraser did here—that a prior felony conviction is so old that it would be

15

unjust to accord it any significance. But that argument would likely be more persuasive for a defendant who had committed no intervening crimes. Fraser could make no such claim.

Ultimately, Fraser's argument amounts to an assertion that the trial court should have weighed the factors differently than it did in deciding whether to strike the strike under section 1385. He has failed to demonstrate any abuse of discretion.

## DISPOSITION

The judgment is affirmed.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

16